

B. McKay Mignault, Chief Bankruptcy Judge
United States Bankruptcy Court

**Dated: September 30th, 2021**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
## AT BLUEFIELD

| | |
|---|---|
| IN RE:<br><br>RUSSELL LEE NICEWANDER and<br>STACI RENEE NICEWANDER,<br><br>        Debtors. | CASE NO. 1:20-bk-10049<br><br>CHAPTER 7<br><br><br>JUDGE B. MCKAY MIGNAULT |
| TRACI S. NICEWANDER,<br><br>        Plaintiff,<br>v.<br><br>RUSSELL LEE NICEWANDER,<br><br><br>        Defendant. | ADVERSARY PROCEEDING NO.<br>1:20-ap-01003 |

## MEMORANDUM OPINION AND ORDER

Pending are Plaintiff's *Motion for Summary Judgment* [dckt. 30] and *Memorandum of Law in Support* [dckt. 31], Defendant's *Response* [dckt. 38], and Plaintiff's *Reply* [dckt. 39]. Plaintiff Traci Nicewander seeks a determination that a debt owed to her by her former brother-in-law, Defendant Russell Lee Nicewander, is nondischargeable pursuant to Section 523(a)(4) of Title 11 of the United States Code (the "Bankruptcy Code").

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). The Court has jurisdiction pursuant to 28 U.S.C. § 157 and 28 U.S.C. § 1334.

**I.**

The factual background of this matter is largely undisputed as reflected in the submissions before the Court as well as the record from Plaintiff's prior suit against Defendant in the Circuit Court of Mercer County (the "Circuit Court Action").

Traci Nicewander ("Plaintiff") was married to Phillip Todd Nicewander on May 25, 1991. Mem. [dckt. 31] at Ex. A (Final Order Following Bench Trial), p. 1. Phillip Todd Nicewander was known as "Todd" Nicewander and was the brother of Russell Lee Nicewander ("Defendant"). *Id.* Todd Nicewander and Russell Nicewander were very close. *Id.*

Plaintiff's father, Jack Sells, died on or about June 25, 2003, leaving most of his estate to Plaintiff. *Id.* at 2. At the time of his death, Mr. Sells was in default on a note secured by certain real estate located in Mercer County (the "Real Estate"). Consequently, the Real Estate was sold on the courthouse steps on October 26, 2004. Todd Nicewander cast the highest bid for the Real Estate, and Plaintiff subsequently paid 100% of the $21,981.00 purchase price using funds inherited from her father's life insurance policy. *See id.*

Although Plaintiff paid full consideration for the Real Estate, she and Todd Nicewander caused the Real Estate to be placed in Defendant's name because, at the time, Plaintiff was defending litigation brought by her mother, Barbara Sells, to contest her inheritance from Jack Sells. *Id.* at 2.[1] Within three or four days after the sale, Todd Nicewander notified Defendant that the Real Estate would be titled in Defendant's name, and Defendant agreed. *Id.* at 3. On November 17, 2004, Todd Nicewander signed a handwritten note prepared by Plaintiff directing the Trustee

---

[1] On September 29, 2008, the Circuit Court of Mercer County determined that Barbara Sells was not properly married to Jack Sells on the date of his death and rejected her claims to share in his estate. *Id.* at 2.

for the Deed of Trust to the Real Estate to place Defendant's name on the deed to the Real Estate. *Id.* Defendant was named on the deed, and that deed was recorded January 22, 2007, in Deed Book 906, Page 479 in the Office of the Clerk of the County Commission in Mercer County. *Id.*

Plaintiff and Todd Nicewander subsequently treated the Real Estate as their own property, including paying for real estate taxes and maintenance and holding family gatherings on the Real Estate. *Id.* Defendant admits that he agreed to hold title to the Real Estate for his brother and Plaintiff, but that Plaintiff was the owner of the Real Estate. *Id.*

Sometime in 2014, approximately ten years after purchasing the Real Estate, Plaintiff, Todd Nicewander, and Defendant agreed to sell the Real Estate. *Id.* at 4. Plaintiff communicated with the realtor and provided the keys to the property to enable it to be listed and sold. *Id.* Judy A. Elkins purchased the Real Estate on November 18, 2014, for $72,500.00. *Id.* After payment of closing costs, $66,479.31 remained in sale proceeds. *Id.* In order to convey clear title to Ms. Elkins, $16,020.24 of these proceeds had to be applied to satisfy Defendant's delinquent personal and business taxes that had converted to a lien against the Real Estate. *Id.* On December 2, 2014, the closing agent provided a check payable to Defendant for the remainder, in the amount of $50,450.07. *Id.* Upon receipt of the check on December 2, 2014, Defendant cashed the entire check at First Century Bank. *Id.* at 5.

The parties' disagreement during the Circuit Court Action centered on what was done with the cash. There appears to be no dispute that Defendant kept $3,000.00 of the sale proceeds to cover the capital gain taxes he would be required to pay as a result of the sale. *See id.* at 5. There appears to be agreement from the record that Defendant was authorized to retain this $3,000.00.

Defendant claimed in the Circuit Court Action that he tendered the remaining $47,500.00 in cash to Plaintiff at his residence. *Id.* at 5. Defendant claimed that no witnesses were present during the exchange and that he did not obtain a receipt. *Id.* Plaintiff, on the other hand, denied receiving any cash from Defendant. In support of this claim, Plaintiff explained that her financial affairs prove she had no cash from 2015–2016. *Id.* Plaintiff and Todd Nicewander filed for divorce in March of 2015, and Plaintiff's mortgage remained in default from August of 2015 through September 27, 2016, when the final divorce decree was entered. *Id.* at 1, 5. Plaintiff borrowed money from relatives to make her home payments in May of 2016 when Todd Nicewander fell behind on making the payments. *Id.* Todd Nicewander was terminally ill with pancreatic cancer at the time, and Paragraph 7(a) of the final divorce decree specifically provided that the proceeds of his life insurance policy would be first paid to satisfy the outstanding mortgage on the marital residence, in which Plaintiff would retain a life estate. *Id.* at 5–6. Todd Nicewander was also ordered to keep the monthly payments current from September 2016 until the time of his death. *Id.* at 6.

Paragraph 7(i) of the final divorce decree also specifically waived any and all claims Todd Nicewander held against Defendant related to sale of the Real Estate. *Id.* The paragraph states that:

> The husband waives any possible claim of the wife to secure proceeds from the sale of real estate (owned by her father) that was put in his brother's name due to a pending lawsuit against the wife at the time of the purchase and sale of the same. The brother's name is Russell L. Nicewander and he conveyed the subject property to Judy A. Elkins on or about November 14, 2014, by deed recorded in Office of the County Commission of Mercer County, West Virginia, in Deed Book 1012 at Page 615.

*Id.*; Mem. [dckt. 31] at Ex. 16, ¶ i.

On November 9, 2016, Plaintiff filed the Circuit Court Action against Defendant in the Circuit Court of Mercer County (the "Circuit Court Action") to recover the proceeds of the sale of the Real Estate. Mem. [dckt. 31] at Ex. A, p. 2.

Todd Nicewander attended a hearing regarding Defendant's motion to dismiss in the Circuit Court Action in June of 2017, but offered no testimony or affidavit. *Id.* at 6. Todd Nicewander died on or about July 22, 2017. *Id.*

On February 24, 2020, the Circuit Court of Mercer County entered a final judgment (the "Circuit Court Order") against Defendant for the sum of $63,479.31 together with pre-judgment and post-judgment interest. After consideration of testimony and nineteen exhibits presented at a bench trial, the Circuit Court concluded that: (a) Plaintiff proved by clear and convincing evidence and uncontradicted testimony that Defendant held the Real Estate in trust for Plaintiff, and (b) Defendant did not prove by a preponderance of the evidence that he paid the $47,500.00 in cash from the sale proceeds to Plaintiff. *Id.* at 7–9. The Court reached the latter conclusion based on the following facts:

(1) Defendant claimed he paid the sum of $47,500.00 in cash when most reasonable people would pay by check or at least obtain a written receipt;

(2) It is not credible that Defendant would give Plaintiff $47,500.00 in cash without his close brother, Todd, or any other witness present;

(3) Defendant did not agree that he owed the $16,020.24 used to satisfy his own tax liens until the Circuit Court Action commenced;

(4) Todd Nicewander would not have waived his right to Plaintiff's claim against his brother if no such claim existed;

(5) Plaintiff's finances after the sale of the Real Estate were not consistent with a person who received $47,500.00 in cash (with her home in prolonged default and having to take a personal loan from a family member to pay the mortgage); and

(6) Defendant falsely claimed that Plaintiff waited until Todd Nicewander died to bring her claim, but the Circuit Court Action was filed prior to Todd

5

Nicewander's death, and Todd Nicewander was present during a hearing on a motion to dismiss the Circuit Court Action.

*Id.* at 9–10. Defendant did not appeal the Circuit Court Order.

Defendant and his wife Stacy Renee Nicewander filed a Chapter 7 bankruptcy petition on June 19, 2020.

Plaintiff commenced this nondischargeability adversary proceeding on September 17, 2020. With leave of the Court, an *Amended Complaint* was filed on February 26, 2021 [dckt. 24], and an *Answer* was filed March 15, 2021 [dckt. 26].

On June 11, 2021, Plaintiff filed her *Motion for Summary Judgment* and *Memorandum in Support*, requesting that this Court grant summary judgment and determine that Defendant's debt to her of $63,479.31, plus interest, is nondischargeable under 11 U.S.C. § 523(a)(4) based upon the doctrines of *res judicata* and collateral estoppel.

On July 23, 2021, Defendant filed a *Response* arguing that summary judgment is not appropriate because the Order entered in the Circuit Court Action did not include any findings of fact regarding intentional or reckless conduct on the part of Defendant, which is required to obtain a nondischargeability ruling pursuant to § 524(a)(4).

Plaintiff filed a *Reply* on August 2, 2021, arguing that (1) the Court should grant summary judgment and find that Defendant was a trustee and a fiduciary; (2) the Court should grant summary judgment against Defendant under § 524(a)(4) because the Circuit Court determined that Defendant could not prove by a preponderance of the evidence that he paid the sale proceeds to Plaintiff and, if he did not do so, he converted, embezzled, or stole those funds; and (3) even if the Court declines to enter summary judgment, it should enter partial summary judgment and treat the Circuit Court's findings of fact as established in this case under Rule 56(g)

of the Federal Rules of Civil Procedure (made applicable herein by Federal Rule of Bankruptcy

Procedure 7056).

The matter is ready for adjudication.

## II.

### A.    Governing Standard

Federal Rule of Civil Procedure 56, made applicable to these proceedings by

Federal Rule of Bankruptcy Procedure 7056, authorizes summary judgment only if "there is no

genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056.  The moving party bears the initial burden to make

a *prima facie* showing of its right to judgment as a matter of law; then the burden shifts to the

nonmoving party, who must go beyond the pleadings and demonstrate that there is a genuine issue

of material fact which precludes summary judgment.  *See Celotex Corp. v. Catrett*, 477 U.S. 317,

324 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008).  "However, the mere existence

of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported

motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."

*Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)).

### B.    Analysis

Plaintiff contends that the Circuit Court Order's findings are binding in this case

because of the doctrines of *res judicata* and collateral estoppel; namely, that a trust was formed

and that Defendant did not pay the sales proceeds of the Real Estate to Plaintiff.  Mem. at 8–9.

Further, Plaintiff argues that these findings are sufficient basis for this Court to grant summary

judgment under 11 U.S.C. § 524(a)(4).  Mem. at 9–10; Reply at 2–3.  Defendant does not dispute

Plaintiff's factual recitation, but argues that, because the Circuit Court Order made no findings

establishing intentional or reckless conduct on the part of Defendant, summary judgment should

be denied.  Resp. at 1–4.  In Reply, Plaintiff argues that, if summary judgment is not awarded, the

Court should alternatively enter partial summary judgment or rule that the Circuit Court Order's

findings are established pursuant to Federal Rule of Civil Procedure 56, made applicable to this

proceeding by Federal Rule of Bankruptcy Procedure 7056.  Reply at 3–4.  These arguments are

addressed in turn below.

### 1. *Res Judicata*

The doctrine of *res judicata*, or claim preclusion, prohibits re-litigation of "further

claims by parties or their privies based on the same cause of action" if a final decision has already

been rendered.  *Brown v. Felsen*, 442 U.S. 127, 131 (1979) (*quoting Montana v. U.S.*, 440 U.S.

147 (1979)).  The Supreme Court has held, however, that *res judicata* is inapplicable in the

bankruptcy nondischargeability context.  *Felsen*, 442 U.S. at 138–39 ("[A] bankruptcy court is not

confined to a review of the judgment and record in the prior state-court proceedings when

considering the dischargeability of respondent's debt."); Bankruptcy Law Manual § 2:29 (5th ed.)

("*Brown* is generally recognized as a "narrow" exception to the general rule that claim preclusion

applies in bankruptcy."); *see also* Kelly C. Porcelli, *Preclusive Effect of Pre-Petition State Court*

*Judgments in Nondischargeability Proceedings*, 6 ST. JOHN'S BANKR. RESEARCH LIBR. No. 25, at

3 (2014).  In a footnote, the Supreme Court in *Felsen* acknowledged that its decision applied to

"res judicata only, and not the narrower principle of collateral estoppel."  *Id.* at 139, n.10.  The

Supreme Court has since permitted application of collateral estoppel principles to

nondischargeability determinations.  *See Grogan v. Garner*, 498 U.S. 279, 284–85, 291 (1991)

(holding that the preponderance of the evidence standard governs the question of nondischargeability and, thus, a bankruptcy court could properly give collateral estoppel effect to those elements of a prior, fully-litigated claim that are identical to the elements required for discharge).

*Res judicata* principles have no bearing on the Circuit Court's Order. Plaintiff is consequently not entitled to summary judgment on *res judicata* grounds.

### 2. Collateral Estoppel

Collateral estoppel prohibits re-litigation of specific issues already adjudicated by a valid and final order of another court. *Sartin v. Macik*, 535 F.3d 284, 287–89 (4th Cir. 2008). As noted, the Supreme Court's decision in *Grogan* permits use of this preclusion doctrine in the nondischargeability context. *Grogan*, 498 U.S. at 284, n.11. In assessing the applicability of collateral estoppel, the bankruptcy court applies the law of the tribunal entering the prior judgment. *Sartin*, 535 F.3d at 287; *Pahlavi v. Ansari (In re Ansari)*, 113 F.3d 17, 19 (4th Cir. 1997) ("In determining the preclusive effect of a state-court judgment, the federal courts must, as a matter of full faith and credit, apply the forum state's law of collateral estoppel….") (citations omitted).

The final order in this case was entered by the Circuit Court of Mercer County. Thus, West Virginia law controls the collateral estoppel determination. Under West Virginia law, collateral estoppel applies when the following factors are met:

> (1) The issue previously decided is identical to the one presented in the action in question; (2) there is a final adjudication on the merits of the prior action; (3) the party against whom the doctrine is invoked was a party or in privity with a party to a prior action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

Syl. Pt. 1, *State v. Miller*, 459 S.E.2d 114, 117 (W. Va. 1995); *Donham v. Walters (In re Walters)*, Adv. Proc. No. 10-93, 2011 Bankr. LEXIS 2147, at *10, 2011 WL 2224616, at * 3 (Bankr. N.D.

W. Va. June 7, 2011); *Jackson v. Harris (In re Harris)*, Adv. Proc. No. 08-13, 2008 Bankr. LEXIS 2329, *10, 2008 WL 4279505, at * 4 (Bankr. N.D. W. Va. Sept. 15, 2008).

Here, the Circuit Court Order constitutes a final adjudication as to the merits of the Circuit Court Action.  The Plaintiff and Defendant were parties to that action, and both parties had a full and fair opportunity to litigate the merits.  The only remaining factor is whether any of the issues previously decided in the Circuit Court Order are identical to the issues presented in this nondischargeability action.

Section 727(b) of the Bankruptcy Code provides that a Chapter 7 discharge relieves a debtor "from all debts" that arose before the filing of the bankruptcy petition.  Not every debt, however, is subject to being discharged.  The Bankruptcy Code embodies a basic policy of affording relief only to an "honest but unfortunate debtor."  *Cohen v. de la Cruz*, 523 U.S. 213, 217 (1998).  Accordingly, Section 523(a) of the Bankruptcy Code provides nineteen exceptions whereby a pre-petition debt remains valid after entry of a debtor's discharge order.  *See* 11 U.S.C. § 523(a).  Because these exceptions to discharge contravene the "fresh start" policy of the Bankruptcy Code, they are construed narrowly in favor of the debtor.  *E.g., Strack v. Strack (In re Strack),* 524 F.3d 493, 497 (2008); *Bullock v. BankChampaign, N.A.,* 569 U.S. 267, 275 (2013) ("[E]xceptions to discharge should be confined to those plainly expressed.") (internal citations omitted).

Plaintiff relies upon Section 523(a)(4), which excepts from discharge debts arising from "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."  11 U.S.C. § 523(a)(4).  This section encompasses four types of debts: (1) fraud while acting in a fiduciary capacity, (2) defalcation while acting in a fiduciary capacity, (3) embezzlement, and (4) larceny.  Plaintiff specifically alleges that Defendant's debt to repay the Real Estate sale proceeds

to her constitutes (1) defalcation while acting in a fiduciary capacity or, alternatively, (2) embezzlement. *See* Mot. at 9–10; Reply at 2–3.

### A.     Defalcation While Acting in a Fiduciary Capacity

To establish an exception to discharge for debts arising from defalcation while acting in a fiduciary capacity, Plaintiff must show, by a preponderance of the evidence, the existence of both (1) a fiduciary relationship and (2) defalcation while acting in that fiduciary capacity. *See Grogan*, 498 U.S at 283, 291 (applying a preponderance of the evidence standard to § 523(a) causes of action).

"The definition of 'fiduciary' for purposes of § 523(a)(4) is controlled by federal common law and is narrower than under general common law." *Harrell v. Merchant's Express Money Order Co. (In re Harrell)*, 173 F.3d 850, 1999 WL 150278, *3 (4th Cir. 1999) (citing *Miller v. J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 602 (5th Cir. 1998)).  However, courts often look to state law as an important factor in deciding whether a fiduciary relationship exists.[2]  Under the federal common law, the term "fiduciary" includes express or technical trusts:

> [The term "fiduciary capacity" as used in § 523(a)(4)] has been fixed by judicial construction for nearly a century. . . .  [T]he statute "speaks of technical trusts, and not those which the law implies from contract."  The scope of the exception was to be limited accordingly.  Through the intervening years that precept has been applied by this court in varied situations with unbroken continuity.  It is not enough that by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as trustee *ex maleficio*.  He must have been a trustee before the wrong and without reference thereto. . . .  "The language would seem to apply only to a debt

---

[2] *See, e.g., Kubota Tractor Corp. v. Strack (In re Strack)*, 524 F.3d 493, 498 (4th Cir. 2008); *Regan v. Regan (In re Regan)*, 477 F.3d 1209, 1211 n. 1 (10th Cir. 2007); *Blaszak v. Blaszak (In re Blaszak)*, 397 F.3d 386, 391 (6th Cir. 2005); *In re Gupta*, 394 F.3d 347, 350 (5th Cir. 2004); *The Andy Warhol Found. for Visual Arts, Inc. v. Hayes (In re Hayes)*, 183 F.3d 162, 166 (2d Cir. 1999).

> created by a person who was already a fiduciary when the debt was created."

*Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 333 (1934) (internal citations omitted); *see also Bradley, et al., v. Kelley (In re Kelley)*, 948 F.2d 1281, 1991 WL 249524, at * 2 (4th Cir. 1991). Thus, under federal common law, a fiduciary is limited to instances involving express or technical trusts, and "[t]he trustee's obligations must have been imposed prior to, rather than by virtue of, any claimed misappropriation of funds[.]"  *See Harrell*, 173 F.3d 850, 1999 WL 150278, at *3. Constructive trusts and resulting trusts generally fall short of the requirements of § 524(a)(4) because the trust relationship is created at the same time as the debt.  *See, e.g., Harrell*, 173 F.3d 850, 1999 WL 150278, at *3; *Guerra v. Fernandez-Rocha (In re Fernandez-Rocha)*, 451 F.3d 813, 816 (11th Cir. 2006) ("Constructive or resulting trusts, which generally serve as a remedy for some dereliction of duty in a confidential relationship, do not fall within the § 523(a)(4) exception because the act which created the debt *simultaneously* created the trust relationship.") (internal citations and quotations omitted).

"In some circumstances, a technical trust relationship may be created by state statute or common law doctrines that impose trust-like obligations on a party sufficient to render the debtor a fiduciary within the meaning of section 523(a)(4)."  4 *Collier on Bankruptcy* ¶ 523.10[1][d] (Alan N. Resnick & Henry J. Sommer, eds 16th ed.); *see also, e.g., LSP Inv. P'ship v. Bennett (In re Bennett)*, 989 F.2d 779, 784–85 (5th Cir. 1993) ("Most courts today, however, recognize that the 'technical' or 'express' trust requirement is not limited to trusts that arise by virtue of a formal trust agreement, but includes relationships in which trust-type obligations are imposed pursuant to statute or common law.").  This Court has previously recognized that a technical trust requires "trust-type obligations that are imposed under statute or common law." *Gillespie v. Gillespie (In re Gillespie)*, 2017 WL 3175900, at *3 (Bankr. S.D. W. Va. July 25,

12

2017) (citing *Huntington Nat'l Bank, et al., v. Aman (In re Aman)*, 498 B.R. 592, 604 (Bankr. N.D.

W. Va. 2013)).  Fiduciary relationships require "the same high standard as a trust" and may be

created where there is a difference in knowledge or power between the fiduciary and principal.  *Id.*

"These are relationships that require the principal to repose a special confidence in the fiduciary"

beyond a mere debtor-creditor relationship.  *See id.* (internal citations and quotations omitted).

   In this case, Plaintiff argues that Defendant was a fiduciary under § 523(a)(4)

because of the Circuit Court's finding, by clear and convincing evidence, that a resulting trust was

created under West Virginia common law at the time that Plaintiff paid for the Real Estate and

placed it in the name of Defendant.  *See* Mem. at Ex. A, p. 8. While called a "resulting trust," this

trust is not the sort of "resulting trust" that is imposed as an equitable remedy to wrongdoing or

unjust enrichment; rather, it is particular to West Virginia real estate law and is imposed without

regard to wrongdoing.  This resulting trust arises in favor of a payor "where one pays purchase

money for land and title is taken in another's name." Syl. Pt. 1, *Carter v. Walker*, 121 W. Va. 81,

1 S.E.2d 483 (1939).  Unlike resulting trusts available as an equitable remedy for wrongdoing,

which are imposed at the time a debt is wrongfully created, this resulting trust arises when a piece

of real estate is conveyed to a person other than the payor:

> If, where a person pays money for property which is at the time
> conveyed to another, the circumstances are such as to give rise to a
> resulting trust for the benefit of the payor, the trust arises
> immediately when the payment is made.  Such trust cannot arise if
> the legal title itself depends on a contingency at variance with the
> trust theory, or the alleged beneficial interest is conditional.

*Id.* at Syl. Pt. 8.

   In this case, the Circuit Court held that a resulting trust arose under West Virginia

law at the time that Plaintiff paid for the Real Estate in 2004, which was ten years before the Real

Property was sold.  Thus, Defendant was already a fiduciary when the debt was created.  While

called a "resulting trust," this trust is not imposed as a result of an act of wrongdoing.  Rather, it arose *ten years before* the debt at issue as a result of specific trust obligations imposed by West Virginia common law beyond a mere debtor-creditor relationship, therefore satisfying the fiduciary element of Section 524(a)(4).  Notably, the Circuit Court's determination that a resulting trust was created was based upon uncontroverted evidence sufficient to meet a clear and convincing standard, which is more difficult to meet than the preponderance-of-the-evidence standard applicable to claims under Section 524(a)(4).  Indeed, Defendant's Response does not dispute that the fiduciary element of § 524(a)(4) is satisfied.  Therefore, the Circuit Court Order's determination that a resulting trust under West Virginia common law was created at the time that Plaintiff paid for the Real Estate, ten years prior to the debt and any alleged wrongdoing by Defendant, satisfies the fiduciary element of § 524(a)(4).

Second, Plaintiff must establish that Defendant committed an act of defalcation while acting as a fiduciary in order to prevail on her Motion for Summary Judgment.  While the precise meaning of "defalcation" for purposes of § 523(a)(4) have never been entirely clear, the Fourth Circuit has described the tort of defalcation as "'the failure to meet an obligation' or 'a nonfraudulent default.'" *Republic of Rwanda v. Uwimana (In re Uwimana)*, 274 F.3d 806, 811 (4th Cir. 2001) (citing *Black's Law Dictionary* 427 (7th ed. 1999)), abrogated on other grounds by *BankChampaign*, 569 U.S. 267.  Other courts have also described defalcation as "a failure to produce funds entrusted to a fiduciary."  *Fernandez-Rocha*, 451 F.3d at 816 (citing *Quaif v. Johnson*, 4 F.3d 950, 955 (11th Cir. 1993)).  Additionally, the Supreme Court has included a state of mind requirement for defalcation.  In *Bullock v. BankChampaign, N.A.,* the Supreme Court held that defalcation under § 523(a)(4) includes a culpable state of mind requirement "involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary

14

behavior." *Id.*, 569 U.S. at 269.  An intentional wrong encompasses "not only conduct that the fiduciary knows is improper, but also reckless conduct of the kind that the criminal law also treats as equivalent[,]" such as when a fiduciary "consciously disregards (or is willfully blind to) a substantial and unjustifiable risk" that his conduct will result in a breach of fiduciary duty." *Id.*, 569 U.S. at 273–74.

While the record includes a finding that Defendant failed to pay proceeds of the sale of the Real Estate owed to Plaintiff, neither the Plaintiff's Motion nor the Circuit Court Order includes evidence that Defendant engaged in intentional or reckless conduct as required under *Bullock v. BankChampaign, N.A.*.[3]  Accordingly, Plaintiff has failed to show that there is no genuine dispute of material fact as to the second element of her § 524(a)(4) claim for defalcation and is not entitled to judgment as a matter of law.

B.      *Embezzlement*

Under § 523(a)(4), embezzlement is "the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." *Harrold v. Raeder (In re Raeder)*, 399 B.R. 432, 439 (Bankr. N.D.W. Va. 2009) (*quoting Miller*, 156 F.3d at 602) (internal quotation marks omitted).  Unlike larceny, embezzlement occurs when "the original taking of the property was lawful, or with the consent of the owner." *Id.*, 399 B.R.

---

[3]  Additionally, the record requires development regarding the nature of Defendant's debt to repay Plaintiff approximately $16,000 in sale proceeds used to satisfy his delinquent taxes.  It is unclear whether Plaintiff, who appears from the record to have controlled and directed the sale process, authorized the use of these proceeds (subject to repayment) to satisfy the tax liens in order to permit the sale to proceed and convey clear title to the purchaser, or whether Defendant authorized this use of the sale proceeds without Plaintiff's consent or permission.  Those facts could be determinative of whether Defendant's debt to repay proceeds used to satisfy his tax liens constitutes a dischargeable unsecured debt or a potentially nondischargeable debt.

at 439.  Embezzlement further requires a showing of wrongful intent.  *BankChampaign*, 569 U.S. at 274 (internal citations omitted).

As with defalcation, neither the Plaintiff's Motion nor the Circuit Court Order shows that Defendant engaged in intentional conduct, which is a material fact.  Absent this factual support, the embezzlement requirements of § 523(a)(4) are not met.  Accordingly, Plaintiff has failed to show that there is no genuine dispute of material fact as to her § 524(a)(4) claim for embezzlement or that she is entitled to judgment as a matter of law.

### 3. *Partial Summary Judgment and Rule 56(g)*

Plaintiff's Reply argues that, even if the Court rules that there are genuine issues of material fact such that summary judgment is not appropriate as this juncture, the Court should enter partial summary judgment and "order that those facts (all thirty-eight) in the Circuit Court's judgment order are not in dispute and are applicable to this case" pursuant to Rule 56(g) of the Federal Rules of Civil Procedure.  The Reply appears to conflate "partial summary judgment" with relief under Rule 56(g) when they are not the same.

While the Court *may* grant partial summary judgment on a portion of a claim (*see, e.g., City of Huntington v. AmerisourceBergen Drug Corp.*, No. 3:17-01362, 2021 WL 972295, at *2, 2021 LEXIS 79514, at *12 (S.D. W. Va. Mar. 15, 2021) (citing *Chavez v. Cty. of Kern*, No. 1:12-CV-01004 JLT, 2014 WL 412562, at *2, 2014 LEXIS 13193, at *2 (E.D. Cal. Feb. 3, 2014)), the Court declines to do so.  As explained above, genuine issues of material fact remain to be established before Plaintiff can be entitled to judgment as a matter of law on any of its claims.

Rule 56(g) of the Federal Rules of Civil Procedure provides that "[i]f the court does not grant all the relief requested by the motion [for summary judgment], it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in

dispute and treating the fact as established in the case." *See* Fed. R. Civ. P. 56(g). The Advisory Committee notes to Rule 56(g) explain that it becomes relevant only after a court has applied the summary judgment standard to each claim, defense, or part of a claim or defense identified in the motion. *See AmerisourceBergen*, 2021 WL 972295, at *2, 2021 LEXIS 47333, at * 14 (citing *Adams v. Klein*, Civ. Action No. 18-1330-RGA, 2020 WL 2404772, *4, 2020 LEXIS 86399, at *4 (S.D. W. Va. May 12, 2020)). "Once that duty is discharged, the court may decide whether to apply the summary-judgment standard to dispose of a material fact that is not genuinely in dispute." *Id.* The Court's authority under Rule 56(g) is purely discretionary—"[e]ven if the court believes that a fact is not genuinely in dispute it may refrain from ordering that the fact be treated as established" and "may conclude that it is better to leave [such facts and issues] open for trial . . . ." *Id.*

Rule 56(g) is relevant to this matter given that the Court has applied the summary judgment standard to each of the Plaintiff's claims. Because of the collateral estoppel effect of the Circuit Court's order, as well as the fact that Defendant does not dispute the facts recited in Plaintiff's *Memorandum of Law in Support of Summary Judgment* [*see* Resp. at 1–2], the Court holds that the following material and undisputed facts are established pursuant to Rule 56(g) of the Federal Rules of Civil Procedure, made applicable by Rule 7056 of the Federal Rules of Bankruptcy Procedure:

1. Defendant held the Real Estate in trust for Plaintiff because a resulting trust was created under West Virginia common law at the time that Plaintiff paid for the Real Estate; and

2. Defendant failed to pay the $47,500 in proceeds he received from the sale of the Real Estate to Plaintiff.

## III.

Plaintiff requests the Court to declare a debt of $63,479.31, plus interest, nondischargeable based on the *res judicata* and collateral estoppel effect of a prior state court judgment. Binding precedent teaches, however, that *res judicata* does not apply to state court judgments in the bankruptcy nondischargeability context. Thus, summary judgment is unavailable on the basis of *res judicata.* Neither does collateral estoppel establish nondischargeability as a matter of law. Because the state court order at issue did not make factual findings to support the requisite state-of-mind elements required to prove defalcation and embezzlement under 11 U.S.C. § 523(a)(4), Plaintiff is not entitled to judgment as a matter of law on these counts of her complaint.

Plaintiff alternatively requests that the Court find that undisputed, material facts have been established in this case pursuant to Federal Rule of Civil Procedure 56(g), made applicable to this proceeding by Rule 7056 of the of the Federal Rules of Bankruptcy Procedure. Having applied the summary judgment standard to the claims at issue in this matter, the Court has determined that certain undisputed, material facts have been established in this case. Therefore,

**IT IS ORDERED** that Plaintiff's motion for summary judgment be, and is hereby, **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's alternative request for a ruling pursuant to Federal Rule of Civil Procedure 56(g), made applicable to this proceeding by Rule 7056 of the of the Federal Rules of Bankruptcy Procedure, be, and is hereby **GRANTED** to the extent set forth herein. The following undisputed, material facts are hereby deemed established in this case:

1. Defendant held the Real Estate in trust for Plaintiff because a resulting trust was
   created under West Virginia common law at the time that Plaintiff paid for the
   Real Estate; and

2. Defendant failed to pay the $47,500 in proceeds he received from the sale of
   the Real Estate to Plaintiff.

The Clerk's Office shall serve a copy of this written opinion and order on Plaintiff,
Plaintiff's Counsel, Defendant, Defendant's Counsel, and the United States Trustee.